Society for the Prevention of Municipal Waste and the Protection of Property Rights in New York City, Plaintiff, *v.* John Purroy Mitchell, and Others, as Members of and Constituting the Board of Estimate and Apportionment of the City of New York, Defendants.

(Supreme Court, Kings Special Term, April, 1917.)

Constitutional law — injunctions — taxpayer's action — city of New York — statutes — when complaint dismissed on merits — Laws of 1911, chap. 777.

In a taxpayer's action to enjoin the board of estimate and apportionment of the city of New York from taking any action to carry into effect a certain contract with the New York Central Railroad Company in pursuance of chapter 777 of the Laws of 1911, which was enacted with the object and purpose of ameliorating the condition of grade crossing evils on the west side of the city, *held*, that said statute is constitutional and that its provisions, which are not mandatory, are still in force.

That there is no merit in plaintiff's suit and there never was any justification for said action either in law or in morals, and defendants' motion for judgment for the dismissal of the complaint on the merits will be granted.

Action for an injunction.

William M. Bennett, for plaintiff.

Charles E. Hughes (Lamar Hardy, corporation counsel, with him on the brief), for defendants.

Manning, J. This case is one that is most important, both from the nature of the controversy itself and the character and standing of the parties concerned.

The plaintiff is a corporation organized and existing under the laws of the state of New York, and claims that it is a taxpayer of the city, assessed to an amount of $1,000.

What its corporate objects and purposes are the court has no definite knowledge, beyond what may be inferred from its title, which is the Society for the Prevention of Municipal Waste and the Protection of Property Rights in the City of New York.

The defendants named in the complaint are the mayor of the greater city, the comptroller, the president of the board of aldermen and the presidents of the various boroughs of the city at large — all of whom constitute the board of estimate and apportionment of the city, and the New York Central Railroad Company.

The purpose of the action, briefly expressed, is to prevent by injunction any action on the part of the defendants looking toward the carrying into effect a certain agreement or contract contemplated to be made by the city on one hand and the railroad company on the other.

This agreement and the various steps taken by the parties thereto were in pursuance of a certain act of the legislature of the state of New York, known as chapter 777 of the Laws of 1911, which act or statute is commonly known as an enabling act.

The so-called Enabling Act of 1911 was passed by the legislature of the state of New York with the object and purpose of ameliorating the conditions of grade crossing evils on the west side of New York, which conditions had been the cause of serious loss of life, and also had been responsible for many years of bitter

strife and legal proceedings between the city and the railroad company. Public feeling had continuously been agitated and aroused and the situation became so acute that it almost assumed the phase of a public scandal.

The railroad was firmly intrenched in its lands and in the enjoyment of its franchise rights, and all efforts on the part of the city to dislodge the road were unsuccessful, as the road established its title in the highest court of the state.

It was the object, therefore, of the act of 1911 to end the struggle, and a most elaborate and comprehensive plan or scheme was devised whereby the whole subject of the differences regarding the matters in dispute were planned to be adjusted upon what appears to be a just, fair and equitable basis.

Both parties proceeded to carry out the spirit and letter of the statute, and during the period of time elapsing between 1911 and 1913, and down as far as 1916, a tentative plan or agreement was prepared, and many hearings and negotiations were had looking toward the consummation of the much desired project.

Many public hearings were had, and at no time was there any attempt made to conceal from the citizens the true situation concerning the most vital and stupendous public measure.

Just when the negotiations were about to be completed by the signing of an agreement, pursuant to the enabling act in question, the whole undertaking was brought to a standstill by the commencement of this litigation and the service of a temporary restraining order.

Nothing further has been done and now comes on the trial of the action upon the merits.

The plaintiff's contention, as I gather it from the complaint, is that the property and funds of the city

are threatened with waste if the proposed agreement is carried out.

The charge is further made that the carrying out of the agreement is a violation by the mayor and other city officials of their duty toward the citizens and taxpayers.

The further charge is made that such contemplated acts on the part of the city officers are in violation of the charter of the city of New York, the Constitution and of the common law, and constitute an act fraudulent, corrupt and in bad faith.

These charges defendants deny.

It is but just and fair to each and every one of the city officials to say that in my opinion their denials are fully justified by the evidence disclosed upon this trial.

There is no merit in the plaintiff's suit, and, what is more, there never was any justification for its action in law or in morals.

During the course of the trial there was not offered or produced even the slightest scintilla of evidence which could by any stretch of the imagination be construed as establishing fraud, bad faith or corruption against any one of the city officials whose names were dragged into these proceedings.

The case is absolutely barren of any fact or circumstance tending to connect these officials with any violation of law or of their sworn duty, but, on the contrary, the proof is abundant that during all these negotiations they at all times faithfully performed their duty and in every way safeguarded the interests of the municipality.

Now as to the law: I am convinced that the so-called Enabling Act of 1911 is constitutional, and that it is not subject to the objection and infirmities suggested by the plaintiff. I am also of the opinion that its provisions are still in force and effect and that it has not

been repealed by any subsequent legislative acts to which reference has been made.

I do not consider that the provisions of section 3 are mandatory, but rather that this section, together with all other parts of the act in question, should be read as part of the whole, so that a proper and sensible construction may be given to the statute. Any different construction would be entirely too technical and narrow, and would only tend to nullify the plain intent of the legislative enactment.

There is no force in the argument advanced that there has been any material departure from the word or spirit of the act in the method of doing certain parts of the work or the preparation of the plans.

As I read the statute it contemplates just the contingency that has arisen, and those in charge of this momentous and important public work were given the discretion and latitude which the nature and apparent engineering difficulties of the situation require.

The plaintiff has utterly failed to prove its case or any case either against the city, the officials thereof or the railroad, and, considering the whole evidence as developed on the trial, I grant the motion of the defendants and order judgment of dismissal upon the merits.

Any injunction that may have been granted I will vacate.

Ordered accordingly.